**In the Matter of Alexander Mark MARTINELLI.**

No. C4-00-748.

Court of Appeals of Minnesota.

Aug. 27, 2002.

Brian C. Southwell, Minneapolis, MN, for appellant.

Amy Klobuchar, Hennepin County Attorney, John L. Kirwin, Assistant County Attorney, Minneapolis, MN, for respondent county.

Considered and decided by HARTEN, Presiding Judge, PETERSON, Judge, and PARKER, Judge.

## OPINION

PARKER, Judge.*

This appeal, taken from an order committing appellant Alexander Martinelli as a sexual dangerous person (SDP), has been remanded from the United States Supreme Court for consideration in light of *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). Because we conclude that appellant was committed upon a showing of "lack of control" that complies with *Crane*, we affirm.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

## FACTS

Appellant Alexander Martinelli was initially committed in January 1998 as a sexually dangerous person (SDP). At that time, Martinelli was about to be released from prison after serving a sentence for third-degree criminal sexual conduct. At the initial commitment hearing, the district court heard from a number of witnesses, including some of Martinelli's victims and four expert witnesses. The court dismissed the petition to commit Martinelli as a sexual psychopathic personality (SPP), finding there was not evidence that he had an "utter lack of power to control his sexual impulses," as required under the SPP statute. The court, however, found sufficient evidence to support commitment of Martinelli as an SDP.

At the initial commitment hearing, the court heard testimony from four expert witnesses. Dr. Douglas Fox, the petitioner county's retained expert, concluded that Martinelli's sexual behavior demonstrated an "utter lack of control over his sexual urges," and that he met the criteria for commitment as an SPP. Dr. Fox also concluded Martinelli met the requirements of the SDP statute, which had not yet been construed to require a "lack of control."

Dr. Thomas Alberg, the first court-appointed examiner, testified that Martinelli was a "borderline" SPP, but that, based on many of the relevant criteria, he had an "utter lack of power to control his sexual impulses." However, Dr. Roger Sweet, the second court-appointed examiner, testified that Martinelli did have the power to control his sexual impulses, although his attitude and behavior showed a lack of control. Dr. Sweet testified that Martinelli exhibited impulsive behavior and a lack of responsibility for his sexual conduct but did not meet the SPP requirement of "utter lack of control." The fourth expert, Dr. Richard Friberg, who had examined Martinelli for suicidal intent while Martinelli was incarcerated but had not done an evaluation on him, did not recommend commitment.

Martinelli appealed the initial SDP commitment order. While that appeal was pending, the district court conducted the 60–day review hearing to consider Martinelli's indeterminate commitment. Dr. Anita Schlank, the clinical director of the Minnesota Sex Offender Program (MNSOP), to which Martinelli had been initially committed, testified there had been no significant change in his condition. Dr. Sweet testified against commitment, as he had at the initial commitment hearing. The district court, however, ordered indeterminate commitment of Martinelli as an SDP.

This court affirmed both Martinelli's initial commitment and his indeterminate commitment in unpublished opinions. *In re Martinelli*, No. C0–98–1684 (Minn.App. Feb.23, 1999); *In re Martinelli*, No. C6–98–569 (Minn.App. Sept.15, 1998). The supreme court granted further review in both appeals, limited to the issue of whether the SDP statute was constitutional despite the absence of a "lack of control" standard. At the time, the issue was before the supreme court in the *Linehan* case. *See In re Linehan*, 594 N.W.2d 867 (Minn.1999) (*Linehan IV*).

The supreme court released *Linehan IV* in May 1999. *Id.* The court upheld the constitutionality of the SDP statute, as construed to require a showing of lack of control. *Id.* at 876. The Linehan IV court, citing language in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), narrowly construed the SDP statute so as to require a showing of future dangerousness linked with an existing mental disorder making it "difficult, if not impossible, for the person to control his dangerous behavior." 594

N.W.2d at 875 (quoting *Hendricks,* 521 U.S. at 358, 117 S.Ct. at 2080). The Linehan IV court also stated that the SDP statute allowed commitment of those whose disorder did not "allow them to adequately control their sexual impulses." *Id.* at 876.

Following release of *Linehan IV,* the supreme court remanded Martinelli's appeal to this court. This court, in an order opinion, remanded to the district court "to determine whether Martinelli meets the standard for commitment as an SDP as clarified in *Linehan [IV]." In re Martinelli,* No. C6–98–569 (Minn.App. Aug.2, 1999).

On remand, the district court issued an amended commitment order. The court noted Dr. Fox's opinion that Martinelli was "utterly lacking in the ability to control his sexual impulses." The court also noted Dr. Alberg's opinion to the same effect, and the evidence that both examiners had cited in support of their opinions. The court acknowledged that Dr. Sweet did not support commitment, but noted Dr. Sweet's finding that Martinelli displayed "sexually addictive behavior." The court concluded that the review hearing presented evidence that Martinelli continued to show a "lack of adequate control."

Martinelli appealed this order. This court issued an opinion affirming the order in September 2000. *In re Martinelli,* No. C4–00–748 (Minn.App. Sept. 12, 2000), *review denied* (Minn. Oct. 26, 2000), *vacated by* —— U.S. ——, 122 S.Ct. 1171, 152 L.Ed.2d 114 (2002). The Minnesota Supreme Court denied the petition for further review of the September 2000 opinion. *Id.* The U.S. Supreme Court, however, following release of its opinion in *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), granted certiorari and remanded to this court for further consideration in light of *Crane. Martinelli v. Minnesota,* —— U.S. ——, 122 S.Ct. 1171, 152 L.Ed.2d 114 (2002).

## ISSUE

Was appellant properly committed as a sexually dangerous person under the civil commitment standard as clarified in *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002)?

## ANALYSIS

 Whether the record provides clear and convincing evidence meeting the standards established for civil commitment is a question of law that this court reviews de novo. *In re Linehan,* 518 N.W.2d 609, 613 (Minn.1994) (*Linehan I*). The narrower question of what standard *Crane*-establishes, and whether Martinelli meets it, is also a question of law. The district court, of course, did not have the benefit of *Crane* when it issued its amended commitment order, and applied only the *Linehan IV* standard. *See In re Linehan,* 594 N.W.2d 867 (Minn.1999).

Martinelli argues that *Crane* requires, at the very least, that a person have "serious difficulty" in controlling his sexual impulses before he may be civilly committed. *See Crane,* 534 U.S. at ——, 122 S.Ct. at 870 (stating "there must be proof of serious difficulty in controlling behavior"). Martinelli argues that the "lack of adequate control" standard from *Linehan IV* that the district court applied is a lower standard than the "serious difficulty" standard approved in *Crane,* and therefore is constitutionally inadequate. He argues that the "lack of adequate control" standard is unconstitutionally vague and insufficient to distinguish sex offenders who may constitutionally be committed from ordinary recidivist offenders.

 The Supreme Court in *Crane* held that the constitution requires some finding on lack of control before a sexual offender

may be civilly committed. *Id.* The Court reiterated that a complete lack of ability to control is not required. *Id.* (citing *Kansas v. Hendricks,* 521 U.S. 346, 358, 117 S.Ct. 2072, 2080, 138 L.Ed.2d 501 (1997)). The Court pointed to its language in *Hendricks* requiring a mental abnormality or personality disorder making it "difficult, if not impossible" to control behavior. *Id.* (emphasis omitted) (quotation omitted). The Court, however, declined to "give to the phrase 'lack of control' a particularly narrow or technical meaning." *Id.*

> It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

*Id.* (citations omitted).

Martinelli argues that the "lack of adequate control" standard applied here does not satisfy *Crane.* But the majority opinion in *Crane* acknowledged it was not laying down any "bright-line rules." *Id.* at ——, 122 S.Ct. at 871. The opinion emphasized the leeway accorded the states under *Hendricks,* as well as the possibility of advances in the science of psychiatry, "whose distinctions do not seek precisely to mirror those of the law." *Id.* We read *Crane* as approving a "lack of control" standard that, although "less precise," at least requires "serious difficulty in controlling behavior," and ties that requirement to a psychiatric diagnosis of a mental abnormality or personality disorder, as well as to the severity of the offender's mental condition. *See id.* at ——, 122 S.Ct. at

870–71. The "lack of adequate control" standard applied here, when read along with the language in *Linehan IV* requiring a "mental abnormality" or "personality disorder" making it "difficult, if not impossible" for that person to control his sexual conduct, satisfies the constitutional standard set by *Crane. See Linehan IV,* 594 N.W.2d at 875 (quoting *Hendricks,* 521 U.S. at 358, 117 S.Ct. at 2080).

■ It is essential, under *Crane,* that there be a judicial finding of "lack of control" based on expert testimony tying that "lack of control" to a properly diagnosed mental abnormality or personality disorder before civil commitment may occur. Such a finding, if it establishes a "serious difficulty" in controlling behavior, adequately distinguishes the offender subject to commitment from the "typical recidivist" offender.

■ The constitutionally required finding has been made in this case. The district court employed the phrase "lack of adequate control." But it is clear that, when considered in light of the expert diagnoses of hebephilia and antisocial personality disorder and the expert opinions on Martinelli's lack of ability to control his behavior, the district court's finding was sufficient to distinguish Martinelli from the "typical recidivist" offender, as required by *Crane.*

Dr. Fox diagnosed Martinelli as suffering from hebephilia, defined as a sexual attraction to teens, specifically male teens, against whom he uses "intimidation, trickery or force to accomplish sexual offenses." Dr. Fox also diagnosed Martinelli as having an antisocial personality disorder, based on his juvenile history of unlawful behavior, use of deceit, failure to pay debts, and other behavior. Dr. Fox concluded, based on Martinelli's history, that he "has not displayed control over his sexual urges, and likely has an utter lack of

control over such behaviors." This conclusion was based on Martinelli's criminal conduct, his grooming of boys even when he was on probation, his engaging in sexually assaultive behavior in front of others, and his use of force in his most recent offense.

Dr. Alberg also diagnosed Martinelli as having a paraphilia of hebephilia and of having an antisocial personality disorder, based on a number of behaviors in addition to Martinelli's criminal offenses. Based on a number of factors, including Martinelli's history of impulsive behavior, Dr. Alberg indicated that Martinelli was unable to control his sexual impulses and was "at high risk" to reoffend with teenage victims. On the HARE checklist used to score for psychopathy, Martinelli scored 29.5, which is just below the score of 30 usually considered to indicate a person is a psychopath.

The other two experts differed on the degree to which Martinelli lacks control over his behavior. But the evidence as a whole establishes a diagnosis of a mental disorder or abnormality (hebephilia and antisocial personality disorder) which is linked to a difficulty in controlling behavior that is properly described as "serious." In addition, the HARE test indicates that Martinelli is borderline psychopathic. This evidence, taken as a whole, adequately distinguishes Martinelli from the "typical recidivist" sex offender who is properly dealt with solely through the criminal law. *See Crane*, 534 U.S. at ——, 122 S.Ct. at 870.

Martinelli argues that the *Linehan IV* standard of "lack of control" is unconstitutionally vague. But that issue has not been previously raised in this appeal, and is not within the scope of the Supreme Court's remand of this case, which is for consideration in light of *Crane*, which contains no discussion of vagueness. We note that a recent opinion of this court has upheld the *Linehan IV* "lack of control" standard against a vagueness challenge. *In re Ramey*, 648 N.W.2d 260 (Minn.App. 2002). As this court holds in *Ramey*, we must consider the "lack of adequate control" language in the context of the offender's history and the diagnosis of mental illness or dysfunction. *See id.* at 268.[1]

Martinelli argues that this case should be remanded for reconsideration by the district court in light of *Crane*. But *Crane* does not prescribe any specific "lack of control" standard. Martinelli argues that a remand is necessary to allow him to cross-examine the expert witnesses using the standards set out in *Crane*. But *Crane* declines to give a "particularly narrow or technical meaning" to "lack of control" that would usefully govern the opinions of the experts. 534 U.S. at ——, 122 S.Ct. at 870. Given the medical testimony already presented in this case, the diagnosis of hebephilia and antisocial personality disorder, and the expert opinions already presented on lack of control, no purpose would be served by remanding to allow the experts to be questioned on the semantic distinctions between "serious difficulty" in controlling sexual behavior, "difficult, if not impossible" to control behavior, and "lack of adequate control" over behavior.

## DECISION

The district court made the "lack of control" finding that is constitutionally re-

---

1. *Ramey* also discusses the issue of future dangerousness. *Id.* But this appeal was taken from an order on remand dealing only with the "lack of control" issue, and it has been remanded for consideration in light of *Crane*, which does not address the issue of future dangerousness. Although the testimony here would support a finding that Martinelli poses a risk of future harm, that issue is not within the scope of review on remand.

quired under *Crane*. That finding, supported by an expert diagnosis of mental abnormality or personality disorder tied to appellant's "lack of control," establishes a "serious difficulty" in controlling behavior, as required by *Crane*.

**Affirmed.**