# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 01-3637

_____

Dennis D. Linehan,

               Appellant,

      v.

Frank R. Milczark, sued as
Frank Milczark,

               Appellee.

*
*
*      
*
*    Appeal from the United States
*    District Court for the
*    District of Minnesota.
*
*
*
*

_____

Submitted:  October 7, 2002
Filed:  January 8, 2003

_____

Before MURPHY, JOHN R. GIBSON, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Dennis Linehan filed this petition for habeas corpus seeking release from his civil commitment under the Minnesota Sexually Dangerous Person Act, Minn. Stat. §§ 253B.02, subd. 18c, 253B.18, subds. 2–3, 253B.185 (2002) (SDP Act).  The district court[1] denied the petition, but issued a certificate of appealability on whether <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997), requires proof of an inability to control

_____

[1] The Honorable David S. Doty, United States District Judge for the District of Minnesota.

one's behavior in order to commit an individual as a sexually dangerous person. Linehan appeals, arguing that the SDP Act and his civil commitment under it are unconstitutional. We affirm.

I.

Linehan began a pattern of sexual misconduct while still in his teens. In 1956 when Linehan was 15, he took indecent liberties with a 4 year old girl and was sent to reform school. At age 19, he had intercourse with a 13 year old girl. In July 1963 Linehan and a friend beat and repeatedly raped a young woman. On June 10, 1965, Linehan attacked and killed a 14 year old babysitter after watching her through a window. He lured her to the door of the house, pulled her outside and into his car, and choked her to death when she resisted his sexual assault. Linehan was arrested the next month for that kidnapping and murder, but before his arrest he had already committed additional offenses. In the course of a few weeks he had raped a 22 year old woman and sexually molested two sisters, ages 11 and 12. In October 1965 Linehan pled guilty to kidnapping the babysitter, and the charges for her murder were dropped. He was sentenced to serve a maximum of 40 years.

In June 1975 Linehan escaped from a minimum security facility with the intent to prove that he could live outside of prison without committing a sexual assault. Eleven days after his escape, Linehan was arrested in Michigan for sexually assaulting a 12 year old girl. He was charged, tried, and convicted for that offense, and he then threatened the victim. When the jury's verdict was read, he pointed a finger at the victim and said, "When I get out I am going to kill you." After serving the next five years in prison in Michigan, Linehan was returned to Stillwater, Minnesota to complete his sentence.

Linehan's mandatory release date was in May 1992, and in March of that year the Ramsey County Attorney petitioned for his civil commitment under the Minnesota

-2-

Psychopathic Personality Commitment Act (PP Act). See Minn. Stat. §§ 526.09–.10 (1992) (current version at Minn. Stat. §§ 253B.02, subd. 18a, 253B.185 (2002)). After commitment hearings, the trial court committed Linehan to the Minnesota Security Hospital for an indeterminate term as a "psychopathic personality." The Minnesota Supreme Court later vacated Linehan's PP Act commitment after concluding that the state had failed to prove by clear and convincing evidence that he exhibited "utter lack of power to control" his sexual impulses as required under the act. See In re Linehan, 518 N.W.2d 609 (Minn. 1994) (Linehan I); see also State ex. rel. Pearson v. Probate Court of Ramsey County, 287 N.W. 297, 302 (1939) (holding that PP Act required a showing of utter inability to control behavior). Linehan was then released in August 1994 to a residence on the grounds of the Stillwater correctional facility where he lived under intensive supervised release and participated in sex offender treatment programs.

On August 31, 1994, the Minnesota Legislature met in a special session and enacted the Sexually Dangerous Persons Act, now codified as Minn. Stat. § 253B.02, subd. 18c (2002). The SDP Act authorizes civil commitment upon a showing of 1) past sexual violence; 2) present mental, personality, or sexual disorder or dysfunction; and 3) resultant likelihood of future sexually dangerous behavior.[2] The act states that for "the purposes of this provision, it is not necessary to prove that the person has an inability to control the person's sexual impulses." See Minn. Stat. § 253B.02, subd. 18c(b) (2002). Two days after the SDP Act was passed, the Ramsey County Attorney filed a petition for Linehan's commitment under it.

---

[2]An individual committed under the SDP Act may seek release under the procedures provided in the Minnesota Commitment and Treatment Act, Minn. Stat. §§ 253B.01, 253.18, subd. 7 and subd. 15 (2002). That statute provides for a special review board to consider all petitions for transfer or discharge brought by patients committed as mentally ill and dangerous to the public, including those committed as sexually dangerous persons. See Minn. Stat. §§ 253B.18, 253B.185(2002).

A commitment hearing was held before Judge Bertrand Poritsky who issued an order on July 27, 1995, after 20 days of testimony. Judge Poritsky concluded that Linehan met the criteria for commitment under the SDP Act and committed Linehan to the Minnesota Security Hospital for a 60 day evaluation period. The court found that Linehan had antisocial personality disorder (APD), based on the criteria listed in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV), and that as a result of his APD and his history of harmful sexual conduct, it was "highly probable" that Linehan would commit further sexual crimes. The court also found that Linehan displayed a continued attraction to young females and that two recent episodes demonstrated "a degree of impulsivity and lack of control in connection with sexual impulses." In these episodes Linehan had been observed masturbating within minutes of physical play with his seven year old stepdaughter. After a further hearing, the trial court issued an order indeterminately committing Linehan as a sexually dangerous person.

Linehan appealed Judge Poritsky's order committing him for a 60 day evaluation, claiming the SDP Act was unconstitutional. The Minnesota Court of Appeals affirmed and upheld the constitutionality of the statute. See In re Linehan, 544 N.W.2d 308 (Minn. App. 1996). The Minnesota Supreme Court accepted review of the intermediate court's decision and later issued its opinion relating to Linehan's initial commitment in In re Linehan, 557 N.W.2d 171 (Minn. 1996) (Linehan III). On the same day the supreme court released its opinion on the appeal from the trial court's indeterminate commitment order, an appeal it had taken directly under accelerated review. See In re Linehan, 557 N.W.2d 167 (Minn. 1996) (later referred to by the supreme court as Linehan II; see In re Linehan, 594 N.W.2d 867, 870 (Minn. 1999) (Linehan IV)). The supreme court rejected Linehan's constitutional claims and upheld his commitment under the SDP Act, holding that the statute "does not require that the proposed patient is unable to control his or her sexual impulses" and that "evidence of Linehan's APD and dangerousness supplied a constitutionally adequate basis for civil commitment." Linehan III, 557 N.W.2d at 175–76, 183.

Linehan petitioned the United States Supreme Court for a writ of certiorari in both Linehan II and Linehan III. While his petitions were pending, the Supreme Court issued its decision in Hendricks. In that case, the Court upheld the constitutionality of a civil commitment under the Kansas Sexually Violent Predator Act and discussed the constitutional protections required for civil commitment statutes. See Hendricks, 521 U.S. 346 (1997). In December 1997, the Supreme Court granted certiorari in Linehan II and Linehan III, vacated the judgments, and remanded the cases for further consideration in light of Hendricks. See Linehan v. Minnesota, 522 U.S. 1011 (1997).

On remand, the Minnesota Supreme Court imposed a narrowing construction to the SDP Act based on its reading of Hendricks and again upheld the constitutionality of Linehan's commitment. See Linehan IV, 594 N.W.2d 867 (Minn. 1999). The court held that while the state need not show that a person meets the "utter inability" standard from the Minnesota Pearson case, Hendricks requires that the state prove that those civilly committed under the SDP Act be "sexually dangerous persons who have engaged in a prior course of sexually harmful behavior and whose present disorder or dysfunction does not allow them to adequately control their sexual impulses, making it highly likely that they will engage in harmful sexual acts in the future." Linehan IV, 594 N.W.2d at 876. The court went on to conclude that Linehan's "lack of adequate control" had been sufficiently established during his commitment proceedings. Linehan again petitioned for certiorari, claiming his civil commitment raised issues of substantive due process, double jeopardy, and ex post facto application. The Supreme Court declined to grant certiorari.

Linehan then filed this petition for a writ of habeas corpus on November 29, 2000, challenging the constitutionality of his civil commitment and seeking his release from confinement. On August 8, 2001, United States Magistrate Judge Arthur J. Boylan issued a report recommending that the petition be denied. Linehan filed objections, and the district court issued an order on September 20, 2001 adopting the

magistrate's report and denying Linehan's petition.  On January 6, 2002, the district court granted Linehan's request for a certificate of appealability.  The court phrased the appealable issue as "Whether the constitutional interpretation in Kansas v. Hendricks, 521 U.S. 346 (1997) requires proof of an 'inability to control' or whether a lesser showing is acceptable."

Linehan appeals, claiming that the SDP Act does not meet federal substantive due process standards because it requires less proof of volitional impairment than that demanded by Hendricks, as clarified in Kansas v. Crane, 122 S. Ct. 867 (2002), and that his indeterminate civil commitment as a sexually dangerous person is unconstitutional because the state did not provide proof of volitional impairment at his commitment proceedings.  The state argues that the SDP Act, as interpreted by the Minnesota Supreme Court, meets constitutional standards, that these standards require a finding of volitional impairment, and that Linehan's commitment is constitutional because he has demonstrated serious difficulty controlling his sexual impulses.

## II.

### A.

When a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus can only be granted where the state court adjudication

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

-6-

>    (2)    resulted in a decision that was based on an unreasonable
>            determination of the facts in light of the evidence presented
>            in the State court proceedings.

Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) (2002) (AEDPA). A state court decision is contrary to clearly established federal law if a state court reached a conclusion "opposite to that reached by [the Supreme Court] on a question of law" or confronted "facts that are materially indistinguishable from a relevant Supreme Court precedent" and reached the opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court has unreasonably applied clearly established federal law if it "identifie[d] the correct governing legal principle from [the Supreme] Court's decision but unreasonably applie[d] that principle to the facts of the [petitioner's] case." Id. at 413. Habeas relief cannot be granted just because a federal court concludes that the state court erred in its application of federal law; the test is whether the state court's application was "unreasonable." See id. at 411.

B.

Linehan argues that Linehan IV applied a rule contradicting the governing law set in Hendricks and Crane, that deference is thus not due the Minnesota decision, and that we should exercise our independent judgment about the constitutional issues. He argues that the SDP Act fails to meet constitutional requirements because the "lack of adequate control" standard is broader than the test set by the Supreme Court. He contends that the SDP Act does not adequately distinguish those eligible for commitment from "the dangerous but typical recidivist convicted in an ordinary criminal case," Crane, 122 S. Ct. at 870, and that what is required is something closer to a "special and serious" lack of ability to control standard. Id.

In Linehan's view the "utter lack of control" standard formulated in the 1939 Pearson case sufficiently distinguishes between a dangerous recidivist and the dangerous sexual offender subject to civil commitment. The Minnesota Supreme

Court's rejection of that standard in <u>Linehan IV</u> is contrary to the "special and serious inability to control" standard established in <u>Hendricks</u>, and clarified in <u>Crane</u>, he contends. He also claims that through judicial interpretation the <u>Pearson</u> standard became a more flexible test and does not conflict with <u>Crane-Hendricks</u>. As an illustration he cites <u>In re Blodgett</u>, 510 N.W.2d 910, 915 (Minn. 1994) (PP Act requires a "volitional dysfunction which grossly impairs judgment and behavior with respect to the sex drive.").

The state responds that the issue in this case is whether the governing law was unreasonably applied by the Minnesota Supreme Court in <u>Linehan IV</u>. It says AEDPA mandates deference to state court decisions and requires a habeas court to focus on "whether the state court's application of clearly established federal law was objectively unreasonable." <u>See</u> <u>Williams</u>, 529 U.S. at 409. It maintains that the SDP Act has been sufficiently narrowed to meet constitutional requirements and therefore the state's decision cannot fail to meet AEDPA's reasonableness standard. The state argues that the SDP Act's three requirements for commitment—past course of harmful sexual conduct, proof of a disorder that results in lack of adequate ability to control behavior, and high likelihood of engaging in future harmful sexual conduct—work in combination to ensure that only a small portion of sex offenders released from prison qualify for commitment under this standard. It further contends that the <u>Pearson</u> standard is equivalent to the absolute lack of control standard rejected as "unworkable" by the Supreme Court. <u>See</u> <u>Crane</u>, 122 S. Ct. at 870.

C.

In <u>Hendricks</u>, the Supreme Court upheld the Kansas Sexually Violent Predator Act against constitutional challenge. That statute provided for civil commitment of persons "who have a mental abnormality or personality disorder and who are likely to engage in repeat acts of sexual violence if not treated for their mental abnormality or personality disorder." Kan. Stat. Ann. § 59-29a01 <u>et</u> <u>seq.</u> (1994). The Supreme

Court observed that the due process clause places constraints on the use of civil commitment statutes but that they have been upheld "when they have coupled proof of dangerousness with the proof of some additional factor, such as a 'mental illness or 'mental abnormality.'" Hendricks, 521 U.S. at 358.

Proof of another factor in addition to future dangerousness serves to limit civil commitments to "those who suffer from a volitional impairment rendering them dangerous beyond their control." Id. at 358. It is the "admitted lack of volitional control, coupled with a prediction of further dangerousness, [that] adequately distinguishes [someone committed under the Kansas statute] from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings," id. at 360. A civil commitment statute will therefore be within constitutional limits if a "mental abnormality" or "personality disorder" is required which makes "it difficult, if not impossible, for the person to control his dangerous behavior." Id. at 358. The Court concluded that the Kansas act set adequate criteria for judging whether an individual is unable to control his dangerous behavior, rejected Hendricks's constitutional attack on it, and reversed the state decision in his favor.

Linehan's petition was remanded by the Supreme Court for reconsideration in light of its Hendricks decision. After the Minnesota court had applied Hendricks to petitioner's claims and issued its decision in Linehan IV, the Supreme Court announced its Crane decision which clarified the level of volitional impairment constitutionally required for commitment. In Crane, the Supreme Court again took up the Kansas commitment statute, for the state court had applied Hendricks to require proof of a complete inability to control sexual impulses. See In re Crane, 7 P.3d 285, 290 (Kan. 2000). The Supreme Court reversed and held that the Kansas court's reading of Hendricks was too restrictive. Proof of a total lack of control is not constitutionally required, the Supreme Court explained, because such an absolute approach would be unworkable. Crane, 122 S. Ct. at 870. What is required in order

for civil commitment to meet constitutional requirements is "proof of serious difficulty in controlling behavior". Id.

Although the certificate of appealability in this case framed the issue in terms of the proof required by Hendricks, Linehan argues that Crane must also be considered because it makes more clear what the Supreme Court intended in Hendricks. The state responds that the Minnesota Supreme Court only had Hendricks to consider when it decided Linehan IV and that Hendricks should be the sole focus here. It points out that Crane was only "decided after Linehan filed his habeas corpus petition" and urges that the clearly established federal law the Minnesota Supreme Court had to apply did not include Crane.[3]

In Crane, the Supreme Court explained that the Kansas Supreme Court had interpreted Hendricks in "an overly restrictive manner," Crane, 122 S. Ct. at 868, for Hendricks "set forth no requirement of total or complete lack of control," id. at 870 (emphasis in original), and purposefully avoided any "bright line" rule. Id. at 871. Since Hendricks was the clearly established federal law the Minnesota Supreme Court was bound to apply in Linehan IV, it is to that case we look in analyzing whether the federal law was reasonably applied. Crane nevertheless has value in the process to the extent its discussion can sharpen out understanding of the Hendricks rule. See id. at 870–81.

---

[3]The Minnesota Supreme Court has not yet discussed Crane, but it recently denied review of an intermediate appellate decision which rejected the argument that Crane announced a different and more demanding standard than Hendricks. See In re Martinelli, 649 N.W.2d 886, 890 (Minn. App. 2002), review denied, No. C4-00-748 (Minn. S. Ct. October 29, 2002).

D.

In Linehan IV the Minnesota Supreme Court correctly identified the Hendricks constitutional standard, and it used similar language in defining what is required for civil commitment under the SDP Act. See Linehan IV, 594 N.W.2d at 875; see also Bell v. Cone, 122 S. Ct. 1843, 1852 (2002) (since state court correctly identified constitutional principles governing petitioner's claim, no merit to claim that its decision was contrary to clearly established federal law); Williams, 529 U.S. at 407. It concluded that "the Minnesota SDP Act 'requires a finding of further dangerousness,'" as well as findings which link that dangerousness "'to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his behavior.'" Id. (quoting Hendricks, 521 U.S. at 358). The court reasoned that although "some lack of volitional control is necessary to narrow the scope of civil commitment statutes," Hendricks does not require proof that a person lack total control over his sexual impulses. Linehan IV, 594 N.W.2d at 873 & n.3. The court concluded that the Pearson utter lack of control standard had been specifically rejected by the SDP Act and that it was equivalent to a complete lack of control test. See id. at 875–76. In enunciating the governing standard under the SDP Act, the court narrowed the possible reaches of the statute to require proof of a "lack of adequate ability to control," holding that this constriction would satisfy substantive due process concerns. See id. at 873 n.3, 876.

The Minnesota Supreme Court held that the SDP Act's lack of adequate control standard requires proof of a volitional impairment rendering a person dangerous beyond his control and a linkage to a diagnosis of a present mental, personality, or sexual disorder or dysfunction. See id. at 875. The court described the type of diagnosis required to be for a "mental abnormality" or "personality disorder" which makes it "difficult, if not impossible" for the person to control his sexual behavior. Linehan IV thus requires a finding of volitional impairment, and it meets the Hendricks requirement that a civil commitment statute provide for

-11-

"distinguishing a dangerous sexual offender subject to civil commitment 'from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings.'" Crane, 122 S. Ct. 870 (quoting Hendricks, 521 U.S. at 360).

We conclude that the Minnesota Supreme Court reasonably applied the clearly established federal law when it reconsidered the constitutionality of the standard for civil commitment under the SDP Act. The standard enunciated in Linehan IV requires a finding of "lack of adequate control" in relation to a properly diagnosed disorder or dysfunction, as well as findings of past sexual violence and resultant likelihood of future sexually dangerous behavior. This combination of required findings will adequately distinguish an offender subject to civil commitment, who has difficulty controlling his behavior because of a disorder or dysfunction, from the more typical offender with behavioral problems, who is best dealt with in the criminal system. The SDP Act standard, as narrowed by the Minnesota Supreme Court in Linehan IV therefore adequately distinguishes between the typical recidivist and the dangerous sexual offender and complies with substantive due process requirements. Since the court's application of Hendricks to the SDP Act meets constitutional requirements, it cannot be considered an unreasonable application of Supreme Court precedent.

E.

In addition to his general constitutional attack on the SDP Act, Linehan contends that his own commitment is unconstitutional. Linehan argues that Crane limited the kind of mental disorders that can serve as a predicate for civil commitment to those severe in nature, at the far end of an inability to control scale. He maintains that the trial court's finding that he suffers from APD, a disorder which he says could be diagnosed in "40%-60% of the male prison population," fails to distinguish him from "other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings." Crane, 122 S. Ct. at 870 (quoting Hendricks, 521

U.S. at 360). His own commitment can therefore not be upheld because the <u>Linehan IV</u> standard will not distinguish a severe case which justifies civil commitment from a milder form present in much of the criminal population. Linehan also argues that there were no clear and convincing findings that he lacked control of his sexual impulses. He contends that even if <u>Linehan IV</u> sufficiently tightened the type of required findings under the SDP Act to make it constitutional, the requisite "lack of adequate control" findings were not made about him.

In its twenty six page initial commitment order and memorandum, the trial court made specific findings that Linehan met the criteria for APD described in the diagnostic manual DSM-IV. The trial court also found that Linehan had revealed "a degree of impulsivity and lack of control in connection with sexual impulses" during several recent family visits. <u>In re Linehan</u>, No. P8-94-0382, slip op. at 23 (Ramsey County Dist. Ct., July 27, 1995). Although the visiting time was limited, he left his wife and stepdaughter to go masturbate after some physical play with the young girl. The trial court concluded that since Linehan had been incarcerated for a long period, it needed to "look for more subtle signs than rape and killing" when evaluating his condition and making its findings. <u>Id.</u> at 24. The court considered Linehan's behavior toward hospital and prison staff in relation to his likelihood of engaging in future harmful conduct and found that his aggressiveness toward both staff and guards indicated an inability to control his behavior even when subject to careful supervision. The court also found it significant that Linehan had had only a single opportunity to commit an additional violent offense after his original commitment and that he had used that opportunity to attack a young girl within two weeks of his escape in 1975. The court also took notice of the fact that the attack occurred after Linehan had escaped in order to prove he could control himself and not commit more sexual offenses. <u>Id.</u> at 17.

The Minnesota Supreme Court took all these findings into consideration. It thoroughly review the evidentiary record before holding that the trial court's findings

fully supported the conclusion that Linehan "lacks adequate control over his sexual behavior." Linehan IV, 594 N.W.2d at 876. The supreme court observed that the record from the commitment hearings "contains substantial evidence that [Linehan] continued to engage in impulsive sexual behavior and lacks adequate control over his harmful sexual impulses." Id. at 878. It concluded that the trial court record and findings were sufficient to distinguish Linehan from the "typical recidivist," and to establish that his behavior met the SDP Act standard for a constitutional civil commitment because of the nature of his APD, combined with his history of sexual violence. See id. at 876–78.

We conclude that the Minnesota Supreme Court did not unreasonably apply the clearly established federal law to Linehan. It was not unreasonable for the court to conclude that there was enough evidence in the trial record to establish that Linehan lacked adequate control over his impulses and that he suffered from a form of APD that warranted civil commitment under constitutional standards. Linehan's claim that his indeterminate commitment under the SDP Act was unconstitutional must therefore fail.[4]

III.

The Minnesota Supreme Court reasonably applied clearly established federal law in narrowing the SDP Act in Linehan's case to meet the substantive due process requirements set by Hendricks. Although Hendricks does not require proof of a complete lack of control, it does require impairment of the ability to control one's behavior. In Linehan IV, the Minnesota Supreme Court defined the SDP Act's lack of adequate control standard in a way that was not an unreasonable application of the law set by the United States Supreme Court since it requires a finding of volitional

_____

[4] We note that there are state procedures available for Linehan to challenge his continued confinement in the future. See Minn. Stat. § 253B.18.

-14-

impairment in connection with a mental disorder or dysfunction which serves to distinguish a sexually dangerous person from a typical recidivist criminal. The Minnesota Supreme Court also reasonably applied clearly established federal law to the facts of petitioner's case in concluding that the record showed he demonstrated a disorder making it difficult, if not impossible, for him to control his dangerous impulses and was constitutionally committed as a sexually dangerous person.

We therefore affirm the denial of the petition for a writ of habeas corpus.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.