# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WARREN DAVID ROSE, JR.,
       *Petitioner-Appellant,*

v.

STEPHEN MAYBERG, Director,
California Department of Mental
Health,
       *Respondent-Appellee.*

No. 05-16881

D.C. No.
CV-03-01502-LKK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior Judge, Presiding

Argued and Submitted
June 14, 2006—San Francisco, California

Filed July 18, 2006

Before: Procter Hug, Jr. and Diarmuid F. O'Scannlain,
Circuit Judges, and Jeffrey T. Miller,* District Judge.

Opinion by Judge O'Scannlain

---

*The Honorable Jeffrey T. Miller, United States District Judge for the
Southern District of California, sitting by designation.

## COUNSEL

David Porter, Assistant Federal Defender, Sacramento, California, argued the cause for the appellant. Quin Denvir, Fed-

eral Defender, Dennis S. Waks, Acting Federal Defender, and Ann C. McClintock, Assistant Federal Defender, Sacramento, California, were on the briefs.

Judy Kaida, Deputy Attorney General, Sacramento, California, argued the cause for the appellee. Bill Lockyer, Attorney General of California, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Senior Assistant Attorney General, and Brian G. Smiley, Deputy Attorney General, Sacramento, California, were on the brief for the appellee.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We consider whether a habeas petition must be granted when a state court jury does not separately determine whether a sexually violent predator suffers from a mental condition that renders him dangerous beyond his control.

### I

In 1982, Warren Rose—then serving in the United States Navy in Guam— committed violent sexual offenses against three eight-year-old girls. Rose was court-martialed, pled guilty, and received a 13-year sentence in federal prison. He was paroled in 1990, having served seven years. Rose then violated the terms of his parole by contacting, hitting, and twice raping his ex-girlfriend. He was returned to federal prison for five years and was released in 1996. Less than a year later, Rose reoffended, committing a lewd act on a seven-year-old girl he was babysitting. He was convicted in state court of committing a lewd and lascivious act upon a child under the age of 14 and was sentenced to a term of three years in state prison.

In 1999, the Sacramento County District Attorney's Office filed a petition to commit Rose involuntarily as a sexually violent predator ("SVP") pursuant to California's Sexually Violent Predator Act ("SVPA"). *See* Cal. Welf. & Inst. Code § 6600 *et seq*. The trial court denied the SVPA petition and Rose received parole in 2000.

Less than a year later, Rose's parole was revoked based on charges that he had contact with a minor, gave false information to his parole officer, and failed to maintain a logbook. After hearing testimony from Rose, his parole agent, and others, the state parole board found that Rose had violated two special conditions of his parole, and assessed Rose four months in prison for each violation.

Following Rose's return to prison, the state filed a second SVPA petition, which was tried to a California Superior Court jury. There, Rose requested the following instruction, which the trial court declined to give:

> In order to find that [Rose] is a Sexually Violent Predator, [the State] must establish beyond a reasonable doubt that [Rose] is currently suffering from a mental condition that renders him dangerous beyond his control.

Rather, the trial court instructed the jury that:

> The term "a sexually violent predator" means a person who, (1) has been convicted of a sexually violent offense against two or more victims for which he or she received a sentence, and (2) has a diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely that he will engage in sexually violent predatory criminal behavior.

Further, the trial court instructed the jury on the requirements for finding a mental disorder:

"Diagnosed mental disorder" includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.

The jury concluded that Rose was a sexually violent predator within the meaning of the SVPA. Consequently, Rose was placed in custody for a two-year period, consistent with the SVPA. Though his original two-year civil commitment term expired in 2003, the State filed recommitment petitions in 2003 and 2005, and Rose remains in Atascadero State Hospital.[1]

After exhausting the claims relevant to this petition in state court, Rose timely filed a petition for a writ of habeas corpus in federal district court, contending that it was error for the state trial judge to refuse to instruct the jury that it must find him "dangerous beyond his control." The district court denied the petition and Rose timely appealed.[2]

II

Rose contends that the state court's refusal to instruct the jury that it must find that he was "dangerous beyond his con-

---

[1]Because the 2003 and 2005 SVPA petitions depend on the legality of the 2001 SVPA petition, the claim is not moot. *Cf. Hubbart v. Knapp*, 379 F.3d 773, 777-78 (9th Cir. 2004) (concluding that even if each California SVPA recommitment proceeding is a separate and distinct civil action, the court may still address a habeas petition challenging the first SVPA commitment in order to ensure that the claim is fully litigated).

[2]Rose also contends that the state courts failed to apply the principles of res judicata and collateral estoppel to his petition, in violation of due process. He further contends that the application of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, to his habeas petition is unconstitutional. In a concurrently filed memorandum disposition, we affirm the district court's denial of Rose's petition as to both of these grounds.

trol" was an unreasonable application of *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Kansas v. Crane*, 534 U.S. 407 (2002).[3] *See* 28 U.S.C. § 2254(d)(1).

## A

In *Kansas v. Hendricks*, the Supreme Court analyzed the constitutionality of the Kansas Sexually Violent Predator Act, which "establishes procedures for the civil commitment of persons who, due to a 'mental abnormality' or a 'personality disorder,' are likely to engage in 'predatory acts of sexual violence.' " 521 U.S. at 350 (citing Kan. Stat. Ann. § 59-29a01 *et seq.* (1994)). There, the Supreme Court determined that the Act satisfied substantive due process considerations, explaining that:

> We have sustained civil commitment statutes when they have coupled proof of dangerousness with the proof of some additional factor, such as a "mental

---

[3] Pursuant to AEDPA, we review the district court's decision to deny a habeas petition de novo. *Benn v. Lambert*, 283 F.3d 1040, 1051 (9th Cir. 2002). Relevant here, AEDPA provides that a habeas petition must be denied unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A decision is "contrary to" federal law if it reaches a conclusion "opposite to that reached by [the Supreme Court] on a question of law" or reached an opposite result from the Supreme Court based on "facts that are materially indistinguishable from a relevant Supreme Court precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A decision involves an "unreasonable application" of federal law if it (1) "correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable," or (2) "extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002) (citation omitted); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable.").

illness" or "mental abnormality." *See*, *e.g.*, . . . *Allen v. Illinois*, 478 U.S. 364, 366 (1986) (Illinois statute permitting commitment of "mentally ill" and dangerous individual); *Minnesota ex rel. Pearson v. Probate Court of Ramsey Cty.*, 309 U.S. 270, 271-272 (1940) (Minnesota statute permitting commitment of dangerous individual with "psychopathic personality"). These added statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control. The Kansas Act is plainly of a kind with these other civil commitment statutes: It requires a finding of future dangerousness, and then links that finding to the existence of a "mental abnormality" or "personality disorder" that makes it difficult, if not impossible, for the person to control his dangerous behavior. Kan. Stat. Ann. § 59-29a02(b) (1994). The precommitment requirement of a "mental abnormality" or "personality disorder" is consistent with the requirements of these other statutes that we have upheld in that it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness.

*Id*. at 358.

**[1]** The Kansas Supreme Court subsequently interpreted the *Hendricks* decision to hold—similar to Rose's contention—that "commitment under the [Kansas SVPA] is unconstitutional absent a finding that the defendant cannot control his dangerous behavior." *In re Crane*, 7 P.3d 285, 290 (Kan. 2000). Upon grant of certiorari, the Supreme Court of the United States squarely rejected the Kansas Supreme Court's view, concluding that involuntary commitment statutes may be upheld if "(1) 'the confinement takes place pursuant to proper procedures and evidentiary standards,' (2) there is a finding of 'dangerousness either to one's self or to others,' and (3) proof of dangerousness is 'coupled . . . with the proof

of some additional factor, such as a 'mental illness' or 'mental abnormality.' " *Crane*, 534 U.S. at 409-10 (quoting *Hendricks*, 521 U.S. at 357-58).

**[2]** The Court dismissed the contention that *Hendricks* required "*total* or *complete* lack of control," *id.* at 411, but concluded that it does require some "lack-of-control" determination, *id.* at 412. That is, "there must be proof of serious difficulty in controlling behavior," *id.* at 413, which "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case," *id.* at 413 (citing *Hendricks*, 521 U.S. at 357-58; *Foucha v. Louisiana*, 504 U.S. 71, 82-83 (1992)).

## B

Here, the California Court of Appeal reviewing Rose's claim of instructional error reasoned that the jury instructions did not violate *Hendricks* and *Crane*:

> The statutory language in the [California] SVPA is similar to the language used in the Kansas act upheld in *Hendricks* and *Crane*. *People v. Buffington* 74 Cal. App. 4th 1149, 1154 (1999). Like the Kansas statute, California's SVPA requires the jury to find that the offender has a "diagnosed mental disorder" that affects his "emotional or volitional capacity," which "predisposes" him to the commission of criminal sexual acts and makes it "likely that he will engage in sexually violent predatory criminal behavior." Under *Crane* these criteria are sufficient to establish the offender has a current mental condition that causes him serious difficulty in controlling his behavior.

*People v. Rose*, 2003 WL 657727, *7 (Cal. Ct. App. 2003).

The California Supreme Court reached the same conclusion shortly thereafter in *People v. Williams*, 74 P.3d 779, 793 (Cal. 2003).

### III

Rose claims he is entitled to habeas relief because the trial court failed to instruct the jury that it had to find Rose was "currently suffering from a mental condition that renders him dangerous beyond his control." This failure to instruct the jury, Rose argues, amounts to a due process violation, and an unreasonable application of *Hendricks* and *Crane*.

### A

In *Crane*, the Supreme Court specifically stated that a finding of complete inability to control one's behavior is not necessary to satisfy due process. The Court declined to give the phrase " 'lack of control' a particularly narrow or technical meaning," but rather recognized that "in cases where lack of control is at issue, 'inability to control behavior' will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior." *Crane*, 534 U.S. at 413. Tellingly, *Crane* reversed the Kansas Supreme Court's strict view of *Hendricks*'s lack-of-control requirement.

**[3]** The state court rightly noted that *Crane* "made clear that a standard of total inability to control one's behavior is not a constitutional prerequisite to an SVP commitment." *Rose*, 2003 WL 657727, *6. Indeed, "the [Supreme Court] explained that '[i]nsistence upon absolute lack of control would risk barring the civil commitment of highly dangerous persons suffering severe mental abnormalities.' " *Id.* (quoting *Crane*, 534 U.S. at 411-12). It follows that the California state court did not engage in an unreasonable interpretation of *Crane* when it concluded that the jury's findings in Rose's commitment proceeding were sufficient to maintain his civil

commitment. Here, the jury instructions required the jury to consider whether Rose suffered from "a diagnosed mental disorder that makes him a danger to the health and safety of others in that it is likely that he will engage in sexually violent predatory criminal behavior." While the jury did not conclude that Rose was completely unable to control his behavior, it did find that Rose suffered from a "diagnosed mental disorder," which "affect[ed] the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." As *Crane* requires, such finding "distinguish[es] the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." 534 U.S. at 413 (citing *Hendricks*, 521 U.S. at 357-58; *Foucha*, 504 U.S. at 82-83).

**[4]** We are satisfied that the California court did not make an objectively unreasonable interpretation of *Crane*'s requirement of "proof of *serious difficulty*"—as opposed to *complete inability*, as Rose would have it—"in controlling behavior." *Id.* (emphasis added).

### B

Prior cases in this and other circuits affirm the reasonableness of the state court's application of *Crane* and *Hendricks*.

### 1

In *Brock v. Seling*, 390 F.3d 1088 (9th Cir. 2004) (per curiam), we considered what types of mental disorders could qualify for civil commitment under Washington's Sexually Violent Predator Act. *See* WASH. REV. CODE § 71.09.020.

*Brock* clarified that "*Crane* speaks to outer limits rather than specific elements. *Crane* does not require 'total or complete' lack of control, but only 'some' showing of an abnor-

mality that makes it 'difficult, if not impossible for the dangerous person to control his dangerous behavior.' " *Id.* at 1091 (quoting *Crane*, 534 U.S. at 411). We stated that:

> Whether predicated on expert testimony that Brock suffered from a paraphilia that rendered him unable to control his desire to rape or testimony suggesting an antisocial personality marked by impulsivity, or both, the jury undoubtedly found that Brock's condition evinced "serious difficulty" in controlling behavior. This is sufficient. *Crane* declined to require that the condition posing serious difficulty be a volitional one.

*Id.*

Rose contends that *Brock* decided only the narrow question of what types of disorders or abnormalities were sufficient to merit civil commitment. We agree that *Brock* addressed that narrow question; however, it also bears on Rose's alleged instructional error. While *Brock* addressed the types of disorders sufficient under *Crane*, it also necessarily implies that a jury instruction requiring a finding of "total or complete lack of control" is *not* required, because the disorder or abnormality need not be one requiring total or complete lack of control.

*Brock* therefore supports our conclusion that the state court was not objectively unreasonable in holding that due process does not require a jury to determine if Rose was completely unable to control his behavior.[4]

---

[4]Indeed, we note that California is not the only state to reach this conclusion. *See*, *e.g.*, *In re Commitment of Laxton*, 647 N.W.2d 784, 793-95 (Wisc. 2002) (holding that *Crane* does not require a separate jury determination of "level of volitional control"); *In re Linehan*, 594 N.W.2d 867, 875 (Minn. 1999) (holding that the Minnesota act comports with *Hendricks* because it "requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality

2

Our decision also accords with the Seventh and Eighth Circuits, which have also addressed the issue. In both *Laxton v. Bartow*, 421 F.3d 565 (7th Cir. 2005), and *Linehan v. Milczark*, 315 F.3d 920 (8th Cir. 2003), the state courts (Wisconsin and Minnesota, respectively), had concluded that a separate and independent jury finding of inability to control was not necessary. *Laxton*, 421 F.3d at 571; *Linehan*, 315 F.3d at 924.

In *Laxton*, the state court had "concluded that civil commitment under the statute does not require 'a separate factual finding regarding the individual's serious difficulty in controlling behavior' because this finding is implicit in the statute's definition of a 'sexually dangerous person.' " 421 F.3d at 571 (quoting *In re Commitment of Laxton*, 647 N.W.2d 784, 793 (Wisc. 2002)). Reviewing *Crane* and *Hendricks*, the Seventh Circuit concluded:

---

disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior"); *State v. Ehrlich*, 204 Ariz. 15, 19 (2002) (concluding that a jury finding of a "mental disorder that makes the person likely to engage in acts of sexual violence" was sufficient to satisfy *Crane*); *In re Luckabaugh*, 568 S.E.2d 338, 348 (S.C. 2002) ("*Crane* does not mandate a court must separately and specially make a lack of control determination, only that a court must determine the individual lacks control while looking at the totality of the evidence."); *State v. White*, 891 So. 2d 502, 509 (Fla. 2004); *State v. Varner*, 800 N.E.2d 794, 798 (Ill. 2003) ("In our view, *Crane* did not hold that the Constitution requires a specific determination by the fact finder in every case that a person lacks volitional control[.]"); *In re Dutil*, 768 N.E.2d 1055 (Mass. 2002); *Van Grinsven v. G.R.H. (In re G.R.H.)*, 711 N.W.2d 587 (N.D. 2006); *Shivaee v. Commonwealth*, 613 S.E.2d 570 (Va. 2005); *In re Det. of Thorell*, 72 P.3d 708, 715 (Wash. 2003) ("We conclude that *Crane* requires a determination that a potential SVP has serious difficulty controlling dangerous, sexually predatory behavior, but does not require a *separate* finding to that effect."); *In re Commitment of Almaguer*, 117 S.W.3d 500, 504 (Tex. App. 2003).

> In light of the Supreme Court's decision in *Crane* to vacate the judgment of the Kansas Supreme Court, the absence of more precise language concerning a lack-of-control element, and the Court's own acknowledgment that bright-line rules are inappropriate in this context, we cannot agree with petitioner's contention that *Crane* clearly establishes that the jury must be instructed and specifically find that petitioner has serious difficulty in controlling his behavior.

*Id.* at 572.

Similarly, in *Linehan*, the Minnesota Supreme Court had previously held that *Hendricks* requires that those civilly committed be " 'sexually dangerous persons . . . whose present disorder or dysfunction does not allow them to adequately control their sexual impulses, making it highly likely that they will engage in harmful sexual acts in the future.' " 315 F.3d at 924 (quoting *In re Linehan*, 594 N.W.2d 867, 876 (Minn. 1999)). The Eighth Circuit concluded that the state's result was not objectively unreasonable because it required a "finding of 'lack of adequate control' in relation to a properly diagnosed disorder or dysfunction, as well as findings of past sexual violence and resultant likelihood of future sexually dangerous behavior." *Id.* at 927.

**[5]** We are satisfied that a state court does not engage in an objectively unreasonable application of *Crane* and *Hendricks* by failing to require a separate jury finding of complete inability to control one's conduct.

### III

For the foregoing reasons, the decision of the district court is AFFIRMED.