**In the Matter of the CIVIL COMMITMENT OF Jimmie Ray RAMEY, d.o.b. 7–20–53.**

No. C5–02–147.

Court of Appeals of Minnesota.

July 23, 2002.

Brian C. Southwell, Minneapolis, MN, for appellant Ramey.

Amy Klobuchar, Hennepin County Attorney, John L. Kirwin, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge, KLAPHAKE, Judge, and HANSON, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Jimmie Ray Ramey challenges the order indeterminately committing him as a sexually dangerous person (SDP) pursuant to Minn.Stat. § 253B.02, subd. 18c (2000). Ramey argues that the Minnesota standard for commitment under this statute fails to meet the lack of control requirements of *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). Ramey further contends that the SDP statute is unconstitutionally vague because the phrases "adequate control" and "course of harmful conduct" provide no legally fixed standards. Finally, Ramey challenges certain evidentiary rulings by the district court.

Because we conclude that the Minnesota standard for commitment as an SDP is consistent with the standard set forth in *Crane* and is not vague either facially or as applied, we affirm. Further, because the evidence of harmful sexual conduct involving Ramey's wife and stepdaughter is clear and convincing, and not unduly prejudicial, the district court did not abuse its discretion in admitting their testimony at trial.

## FACTS

Ramey pleaded guilty on March 14, 1997, to second-degree assault on his wife and was sentenced to 66 months, an upward departure. The charges of first-degree criminal sexual conduct, kidnapping, and terroristic threats were dismissed as part of a plea bargain. As his release date approached, the state filed a petition for Ramey's indeterminate commitment as a sexually dangerous person (SDP).

During the assault on his wife, Ramey dragged her by the ankles from their bed, beat her into a semi-conscious state, poured beer on her, raped her with a heated cucumber, forced her to perform oral sex contrary to her religious beliefs, and then had intercourse with her. Ramey stated that the intercourse was consensual; his wife agreed, stating that she knew the best way to end Ramey's violence was to agree to have sex with him. She later wrote to the district court, contending that the assault was not a sexual

matter and that she had intercourse with Ramey after the argument was over.

Ramey has a general history of violence, including a 1981 third-degree assault conviction, a 1987 second-degree murder conviction, and a 1993 fifth-degree assault conviction. In 1994, he broke a girlfriend's wrist when she refused to give him money for drugs and alcohol.

In 1973, Ramey was accused of abducting a woman and forcing her into his car. She escaped, but reported the matter to the police. One-half hour later, Ramey abducted and raped a 12–year old girl. He pleaded guilty to indecent liberties and was sentenced to the state reformatory. He was paroled in 1976.

It is alleged that from 1976 to 1981, Ramey sexually and physically abused his stepdaughter, S.S., when she was between 9 and 14 years old. After one incident, her grandmother noticed bruises; 10–year old S.S. was examined at the emergency room, but no vaginal traces of sperm were found. S.S. testified that during that incident, Ramey forced her to engage in oral sex and, although he vaginally and anally penetrated her, he did not ejaculate. Ramey was arrested and eventually pleaded guilty to charges of disorderly conduct, resisting arrest, and assaulting a police officer. The rape charge was dismissed. S.S. testified that the abuse continued, but she was threatened by Ramey and was afraid to tell anyone. Ramey denied that any abuse occurred, and there were no corroborating witnesses. S.S. testified that one girl, S.D., observed sexual contact or had been touched sexually by Ramey, but S.D. denied this. S.D. testified that Ramey was her "hero" because he assaulted her stepfather after learning that her stepfather had abused her.

While in prison on the second-degree assault conviction, Ramey was offered, but refused, sexual offender treatment until it was too late to begin the program prior to his release date. Ramey attributes his violent behavior to his addiction to cocaine and alcohol. Although he has completed various chemical dependency treatment programs, he has repeatedly relapsed during prior releases. His latest release plan was to live with the woman whose arm he broke in an argument over money for alcohol and drugs.

The examiners appointed to evaluate Ramey for the commitment petition diagnosed him as having alcohol and cocaine dependence, in remission because of his imprisonment, but with the probability of relapse in the community. He was further diagnosed with Antisocial Personality Disorder. They described Ramey as "hypersexual" and "sexually preoccupied." One examiner described him as "extremely dangerous" and likely to "reoffend very quickly" when in the community. Both examiners concluded that Ramey was "highly likely" to commit sex offenses if not committed and agreed that Ramey lacks adequate ability to control his sexual impulses. One examiner concluded that Ramey had an "utter" lack of power to control his sexual impulses when drinking.

The district court concluded that there was clear and convincing evidence that Ramey had engaged in a course of harmful sexual conduct and that his mental disorders do not allow him to "adequately control his sexual impulses." The court also found clear and convincing evidence that Ramey was likely to engage in future acts of harmful sexual conduct because of his mental disorders and ordered Ramey committed.

On June 6, 2001, the district court issued an order for Ramey's indeterminate commitment as an SDP. On August 30, 2001, the court heard Ramey's motion for amended findings of fact and conclusions

of law. On November 28, 2001, the court granted Ramey's motions in part and denied them in part; this order dealt with language in the findings on minor or specific factual details. On the same date, the court issued its amended findings, conclusions and order for indefinite commitment. Ramey filed a notice of appeal on January 28, 2002.

## ISSUES

1. Is the Minnesota standard for civil commitment as a sexually dangerous person consistent with the standard set forth by the United States Supreme Court in *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002)?

2. Are the terms "lack of adequate control of sexual impulses" and "course of harmful sexual conduct" unconstitutionally vague as applied under Minn.Stat. § 253B.02, subd. 18c (2000)?

3. Did the district court clearly err in finding that Ramey had committed harmful sexual conduct against his wife and stepdaughter?

4. Did the district court abuse its discretion in not excluding the testimony of his stepdaughter as unduly prejudicial under Minn. R. Evid. 403?

## ANALYSIS

### I. *Kansas v. Crane*

Ramey argues that the ruling of the United States Supreme Court in *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), effectively rejected the Minnesota standard for lack of control of sexual impulses necessary to sustain a commitment as an SDP.

Under the Minnesota Commitment and Treatment Act (act), an SDP is one who:

(1) has engaged in a course of harmful sexual conduct * * *;

(2) has manifested a sexual, personality, or other mental disorder or dysfunction; and

(3) as a result, is likely to engage in acts of harmful sexual conduct * * *.

Minn.Stat. § 253B.02, subd. 18c (2000). "Harmful sexual conduct" is "sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another." *Id.*, subd. 7a(a) (2000). There is a rebuttable presumption that criminal sexual conduct in the first, second, third, or fourth degree creates a substantial likelihood of serious physical or emotional harm. *Id.*, subd. 7a(b) (2000). The act does not require an SDP to exhibit an utter lack of ability to control sexual impulses, which is the standard for commitment as a sexual psychopathic personality (SPP). *Id.*, subd. 18b (2000).

The act has been interpreted, because of the standard of proof, to require that the person be "highly likely" to engage in harmful sexual conduct. *In re Linehan*, 594 N.W.2d 867, 876 (Minn.1999), *cert. denied*, 528 U.S. 1049, 120 S.Ct. 587, 145 L.Ed.2d 488 (1999) (*Linehan IV*). In addition, the Minnesota Supreme Court, relying on *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), read a lack-of-control standard into the act:

> [L]ike the Kansas Act, the Minnesota SDP Act "requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior."

*Linehan IV*, 594 N.W.2d at 875 (quoting *Hendricks*, 521 U.S. at 358, 117 S.Ct. at 2080, 138 L.Ed.2d 501).

The significance of requiring a degree of lack of control is to distinguish the SDP

from offenders who have committed similar offenses, but who should be dealt with in the criminal justice system. This requirement narrows the group of those who can be committed as an SDP under the act. Thus, in *Hendricks,* the United States Supreme Court noted that the Kansas

> statutory requirements serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control.
>
> * * * *
>
> [This] adequately distinguishes Hendricks from [those] who are perhaps more properly dealt with exclusively through criminal proceedings.

*Hendricks,* 521 U.S. at 358–60, 117 S.Ct. at 2080–81, 138 L.Ed.2d 501.

■ *Linehan IV* quoted this *Hendricks* language, commenting that this reasoning "establishes that some lack of volitional control is necessary to narrow the scope of civil commitment statutes." *Linehan IV,* 594 N.W.2d at 873 (footnote omitted). The Minnesota Supreme Court held that the SDP standard, while not requiring an utter lack of control, did require, as did *Hendricks,* "a degree of volitional impairment such that [the offenders are] 'unable to control their dangerousness.'" *Id.* at 875 (quoting *Hendricks,* 521 U.S. at 358, 117 S.Ct. at 2080, 138 L.Ed.2d 501). The supreme court's final distillation of this standard states

> that the SDP Act allows civil commitment of sexually dangerous persons who have engaged in a prior course of sexually harmful behavior and whose present disorder or dysfunction does not allow them to adequately control their sexual impulses, making it highly likely that

they will engage in harmful sexual acts in the future.

*Id.* at 876.

In *Crane,* the United States Supreme Court has further refined *Hendricks. Crane* affirms that *Hendricks* does not require a total or complete lack of control for civil commitment of sexually dangerous offenders, but affirmatively states that some lack of control determination must be made. *Crane,* 534 U.S. at ——, 122 S.Ct. at 870, 151 L.Ed.2d 856. The key is to "distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* The Court concluded that confinement would involve those who "find it particularly difficult to control their behavior—in the general sense." *Id.,* 534 U.S. at ——, 122 S.Ct. at 871, 151 L.Ed.2d 856. The *Crane* Court did not seek to set forth detailed rules regarding where mental disorder and difficulty in controlling behavior must intersect on a continuum to render an individual subject to confinement. Rather, it stated:

> We recognize that *Hendricks* as so read provides a less precise constitutional standard than would those more definite rules for which the parties have argued. But the Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules. For one thing, the States retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment.

*Id.*

■ In short, *Crane* adds to *Hendricks* the affirmative duty to make a lack of control determination, which is already a requirement of the Minnesota standard

under *Linehan IV*. *Crane* explicitly does not prescribe one particular standard for that determination. Rather, there must be a determination that a lack of ability to control behavior distinguishes the SDP from the ordinary offender, whether (1) it is "difficult, if not impossible * * * to control his dangerous behavior" as in *Hendricks;* (2) there is "serious difficulty in controlling behavior" as in *Crane;* or (3) there is an inability to "adequately control their sexual impulses," as in *Linehan IV*.

We therefore conclude that the requirement of an inability to control behavior to some degree, as required by *Crane*, is satisfied by the interpretation of the SDP act as set forth in *Linehan IV*.

## II. Vagueness

Ramey argues that the phrases "lack of adequate control" and "course of harmful sexual conduct" are unconstitutionally vague in general and as applied to him. Ramey also argues that the phrases leave the district court with too much discretion to establish the limits of the statute's reach, thus failing to give notice of what conduct is prohibited by the act. Ramey apparently concedes that were the district court to articulate the standard as "serious difficulty in controlling," as the *Crane* Court did, instead of "lack of adequate control," the statute would not be unconstitutionally vague.

■■■ A statute that "defines an act in a manner that encourages arbitrary and discriminatory enforcement, or * * * is so indefinite that people must guess at its meaning" is void for vagueness. *Hard Times Café, Inc. v. City of Minneapolis*, 625 N.W.2d 165, 171 (Minn.App.2001) (quotation omitted). The burden of proof is on the party challenging the constitutionality of the law. *Id.* "Courts should exercise extreme caution before declaring a statute void for vagueness." *Id.* (citation omitted).

■■■ A statute is not impermissibly "vague merely because it is possible to imagine some difficulty in determining whether certain marginal fact situations fall within its language." *Humenansky v. Minn. Bd. of Med. Exam'rs.*, 525 N.W.2d 559, 564 (Minn.App.1994) (citation omitted), *review denied* (Minn. Feb. 14, 1995). A statute is constitutionally infirm only when the meaning of an undefined word or phrase is not commonly understood or has not been established by judicial construction. *Id.* (citing Minn.Stat. § 645.08(1) (2000)). A vagueness challenge is upheld only if the law is "impermissibly vague in all of its applications." *Village of Hoffman Est. v. Flipside, Hoffman Est., Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

### A. Adequate Control

The term "adequate control," is taken from *Linehan IV*, where the issue was whether the SDP standard was narrowly tailored enough to serve a compelling state interest without violating substantive due process. *Linehan IV*, 594 N.W.2d at 876. The supreme court concluded that the SDP standard must be narrowly construed so that, while not needing to prove an utter lack of ability to control sexual impulses, the committing court must find future dangerousness linked with an existing mental disorder that makes it "difficult, if not impossible, for the person to control his dangerous behavior." *Id.* at 875 (quoting *Hendricks*, 521 U.S. at 358, 117 S.Ct. at 2080, 138 L.Ed.2d 501). The supreme court then held:

> [T]he SDP Act allows civil commitment of sexually dangerous persons who have engaged in a prior course of sexually harmful behavior and whose present disorder or dysfunction does not allow them to adequately control their sexual impulses, making it highly likely that

they will engage in harmful sexual acts in the future.

*Id.* at 876, 534 U.S. 407, 151 L.Ed.2d 856.

Any vagueness in the phrase "adequate control" comes from taking it out of the larger context. In *Humenansky,* the appellant argued that the licensing statute under which she lost her psychiatrist's license was vague, because the phrase "mental condition" was not defined. *Id.,* 525 N.W.2d at 564. However, the court noted that the statute prohibited a physician from practicing if, due to a mental or physical condition, the physician demonstrated an inability to practice with reasonable skill or safety to patients. *Id.* In that context, the court concluded that the term "mental condition" was not unconstitutionally vague. *Id.* at 565. Taken in the larger context of the holding of *Linehan IV,* the meaning of the phrase "adequate control" is clear; an offender's history of harmful sexual conduct and a high likelihood of future dangerousness, coupled with a mental illness or dysfunction, demonstrates that an offender will find it difficult to control behavior. *Linehan IV,* 594 N.W.2d at 875.

In challenging a statute as void for vagueness, the challenging party must show that the statute lacks specificity as to his own behavior. *Ruzic v. Comm'r. of Pub. Safety,* 455 N.W.2d 89, 92 (Minn.App. 1990), *review denied* (Minn. June 26, 1990). An offender whose behavior is clearly proscribed by law may not challenge an enactment because of vagueness as "applied to the conduct of others." *Village of Hoffman Est.,* 455 U.S. at 495, 102 S.Ct. at 1191, 71 L.Ed.2d 362.

The findings of the district court here were specific as to how Ramey's past violent sexual behavior and his present mental disorders or dysfunctions interacted to support a finding of lack of control over his sexual impulses that makes it highly likely he will engage in harmful sexual acts in the future. The conclusion of one expert witness was that Ramey lacked "utter control" over his sexual impulses when drinking or using cocaine, and both experts agreed that Ramey was likely to resume drinking and using cocaine on release. Because it seems highly likely that Ramey will engage in harmful sexual conduct, given his current mental disorders, past course of harmful sexual conduct, and difficulty in controlling his sexual impulses, the lack of adequate control standard is not vague as applied to Ramey.

### B. Course of Harmful Sexual Conduct

Ramey argues that the statutory phrase "course of harmful sexual conduct" is void for vagueness because it sets no limitations in terms of number of incidents or period of time during which the conduct must occur. While it appears that no published case has interpreted this phrase, this court has opined in unpublished opinions that "course" is defined, using its ordinary meaning, as "a systematic or orderly succession; a sequence." *In re Banks,* No. C5–99–217, 1999 WL 451207, at *2 (Minn.App. July 6, 1999) (quoting *The American Heritage Dictionary* 430 (3d ed.1992)). Further, this court has concluded that the course of conduct need not consist solely of convictions, but may also include conduct amounting to harmful sexual conduct, of which the offender was not convicted. *See id.; In re Civil Commitment of Castongauy,* No. C1–99–1025, 1999 WL 1216127, at *3 (Minn.App. Dec.15, 1999), *review denied* (Minn. Feb. 15, 2000). This is consistent with the rules of construction for statutes, that "[w]ords and phrases are construed according to the rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08(1) (2000). As so interpreted, the

phrase "course of harmful sexual conduct" is not vague as applied to Ramey.

## III. Findings of Fact

Ramey argues that the district court erred by finding that he had sexually assaulted his wife and stepdaughter, contending that the evidence was not clear and convincing. With regard to the assault on his wife, Ramey asserts that the evidence is not clear and convincing that the conduct described was "harmful sexual conduct" as set forth under the statute, because his wife claims she suffered no physical or emotional harm from the sexual part of the incident. With regard to his stepdaughter, Ramey claims that her testimony is uncorroborated and unconvincing.

■ On appeal, findings of fact are not set aside unless clearly erroneous, and the record is viewed in a light most favorable to the district court's findings. *In re Knops*, 536 N.W.2d 616, 620 (Minn.1995). Deference is given to the district court's opportunity to judge the credibility of witnesses. *Id.*

■ Ramey's wife testified that although the two had fought on the date of the offense that led to his guilty plea for second-degree assault, the sexual portion of the incident had been fully consensual. This testimony, as well as a letter from Ramey's wife, was available to the district court when it made its decision.

The district court also had other information available to it, including police reports and statements made contemporaneously with the assault, and Ramey's guilty plea. In the original statements made to police, Ramey's wife described the incident roughly as follows: Ramey (1) became angry over something she said; (2) beat her for about two hours; (3) pulled her off the bed by her ankles; (4) poured beer over her and ripped her clothing off; (5) sent her naked down the stairs to get him another beer; (6) grabbed her by her neck and slammed her into a wall; (7) charred a cucumber and penetrated her vaginally with its burnt end; (8) forced her to perform oral sex; and (9) threw objects at her, resulting in cuts from the broken glass. After enduring all this Ramey demanded, and his wife acquiesced in, sexual intercourse. In his guilty plea, Ramey apparently conceded that this was an accurate statement of facts, although he claimed that the final act of intercourse was consensual.

The standard that must be met for "harmful sexual conduct" is "sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another." Minn.Stat. § 253B.02, subd. 7a(a). The standard is not that it *must* create physical or emotional harm; rather, there must be a substantial likelihood of harm. There is also a rebuttable presumption that conduct described in certain criminal statutes creates a substantial likelihood of serious physical or emotional harm, including criminal sexual conduct in the first and second degree. Minn.Stat. §§ 609.342, .343 (2000). Creating reasonable fear of imminent great bodily harm, using force or coercion, or causing personal injury to accomplish sexual contact or penetration are types of conduct included in first- and second-degree criminal sexual conduct. *See id.* Certainly, the district court had an adequate basis for its findings.

■ Ramey's stepdaughter testified about sexual contact and penetration perpetrated upon her by Ramey over a five-year period of time. Only one incident was partially documented; after her grandmother noticed bruising, an emergency room physician examined her. No traces of sperm were discovered in the screen performed. During that incident, Ramey's stepdaughter testified that he had

forced her to perform oral sex, and afterwards penetrated her vaginally and anally, but did not ejaculate.

Ramey was charged with rape because of this incident. The rape charge was dismissed *nolle prosequi,* although Ramey did plead to disorderly conduct, assaulting a police officer, and resisting arrest. As part of the bond hearing on the incident, the court in 1978 referred to the sexual nature of the assault on Ramey's stepdaughter, concluded that Ramey had a mental problem and that the family and his stepdaughter understood that he had a mental problem, and that the best recourse was to treat Ramey as mentally disturbed and get him help. The court referred to this as the family's wishes. Despite Ramey's representations, the 1978 court did not lightly dismiss the evidence of a sexual assault.

The district court here had the advantage of hearing the witnesses personally and judging their relative credibility. A reviewing court generally defers to the district court in matters of witness credibility. Minn. R. Civ. P. 52.01. Because there is a factual basis in the record that supports the district court's findings concerning the sexual conduct with Ramey's wife and stepdaughter, those findings are not clearly erroneous.

### IV. Admission of Evidence

Ramey argues that his stepdaughter's testimony should have been excluded because "its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403.

Ramey argues that the pattern of conduct to which his stepdaughter testified occurred 20 years previously, making it difficult for him to defend. Further, Ramey contends that the probative value of this uncorroborated evidence was greatly outweighed by its prejudicial effect. Apparently arguing by analogy, Ramey compares the admission of Spreigl evidence in a criminal case with the use of this testimony in a civil hearing.

The decision of whether to admit or exclude evidence is within the district court's discretion and will be reversed only if the court has clearly abused its discretion. *Myers v. Hearth Techs., Inc.,* 621 N.W.2d 787, 791 (Minn.App.2001), *review denied* (Minn. Mar. 13, 2001). Unlike Spreigl evidence, which is disfavored because of the danger of proving a propensity to act in a certain way, Ramey's stepdaughter's testimony was direct evidence of a course of harmful sexual conduct, the core issue of the civil commitment act. By statute, the petitioner must show that an alleged offender has engaged in a course of harmful sexual conduct; in order to do so, the petitioner must offer evidence of a course of harmful sexual conduct. Minn. Stat. § 253B.02, subd. 18c.

Clearly, the district court must still weigh the credibility of the victim in admitting and considering her testimony and this court considered testimony that weighed against the victim's credibility. The court ordered payment of travel expenses for S.D., whose testimony Ramey offered in rebuttal to his stepdaughter's testimony. Further, the court received the affidavit of Ramey's attorney, who attested that the victim's brother refused to testify, but stated that he did not recall being abused by Ramey. Both Ramey's stepdaughter and S.D. were available for questioning and cross-examination, so the court had a real opportunity to make credibility determinations and Ramey was able to challenge his stepdaughter's credibility. We conclude that admission of her testimony was not an abuse of discretion.

### DECISION

The Minnesota standard for civil commitment as an SDP, as set forth in Minn.

Stat. § 253B.02, subd. 18c, and interpreted by *Linehan IV*, meets the lack-of-control standard required by *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). The phrase "lack of adequate control" is not vague as interpreted. The phrase "course of harmful sexual conduct" can be interpreted according to its ordinary meaning and usage, and is not vague. The findings of the district court regarding harmful sexual conduct are not erroneous and are supported by the evidence. The district court did not abuse its discretion in admitting the testimony of S.S., Ramey's stepdaughter.

**Affirmed.**