*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0734**

In the Matter of the Civil Commitment of Aaron Michael Hayes.

**Filed October 31, 2016
Affirmed
Reyes, Judge
Concurring specially, Stauber, Judge**

Mower County District Court
File No. 50PR151718

Paul R. Spyhalski, Austin, Minnesota (for appellant Aaron Michael Hayes)

Lori Swanson, Attorney General, John D. Gross, Assistant Attorney General, St. Paul, Minnesota; and

Kristen M. Nelsen, Mower County Attorney, Austin, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Stauber, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant Aaron M. Hayes challenges his commitment to the Minnesota sex-offender program (MSOP) as a sexually dangerous person (SDP) under the Minnesota Commitment and Treatment Act (the MCTA). Minn. Stat. §§ 253D.01-.36 (2014). Appellant argues that he does not meet the statutory criteria for commitment as an SDP. We affirm.

**FACTS**

*1990 and 1998 Sex Offenses*

In 1990, as part of a child-protection investigation, appellant's sister, M.H., reported that appellant had sexually assaulted her on multiple occassions. At the time of the assault, M.H. was around six years old, and appellant was nine years old. During the investigation, appellant admitted to sexually assaulting M.H. one time but was not criminally charged due to his age. In 2015, when interviewed by a police detective regarding appellant, M.H. reported that appellant had sexually assaulted her when she was five years old. She also reported that appellant had sexually assaulted her more than one time in 1998 when she was fourteen years old.

*2002 Sex Offense*

In 2002, while on conditional release for a second-degree assault charge, appellant sexually assaulted an 81-year-old female, E.W., in her apartment. Appellant pleaded guilty[1] to first-degree criminal sexual conduct and was sentenced to 144 months in prison.

*Incarceration and Treatment*

While in prison, appellant committed numerous disciplinary violations, including assaulting correctional officers and other inmates. In one incident with a correctional

---

[1] Appellant entered a *Norgaard* plea as he claimed that he did not remember sexually assaulting E.W. due to his intoxication that evening. *See State ex. rel. Norgaard v. Tahash*, 261 Minn. 106, 110 N.W.2d 867 (1961) (affirming the district court's acceptance of a guilty plea where the defendant asserted inability to remember the circumstances of the offense).

officer, appellant punched the officer in the head and back, and cut the officer's finger, deep enough to require stitches, with a sharpened toothbrush.

In June 2007, appellant entered the Minnesota sex-offender program (MSOP). Appellant was terminated from the program after one month for threatening the institution's psychiatrist. According to his discharge summary, during his time in treatment, appellant reported having violent thoughts and fantasies, including skinning his cellmate, cutting him into little pieces, and flushing him down the toilet. He also stated that he had "stabbed a lot of people, in the neck and in the chest" and that he would earn the trust of animals just to torture them.

In October 2007, appellant re-entered MSOP. Appellant was again terminated from the program after seven months for threatening another offender and for his lack of progress in the program. According to the discharge summary, during his time in treatment, appellant reported that he did not want to be in treatment. He also stated that he had sexual fantasies about his therapist and that he fantasized about luring other sex offenders to remote locations to do "violent things to them," including killing them.

In 2012, upon retention by Mower County, psychologist Rosemary Linderman, Psy.D., reviewed appellant's records and recommended that a petition be initiated for consideration of appellant's civil commitment as an SDP. Dr. Linderman used two actuarial tools to predict appellant's likelihood of sexual recidivism: the Static-99R and the Static-2002R. On both the Static-99R and Static-2002R, Dr. Linderman scored

appellant as an offender with a moderate-to-high likelihood of future harmful sexual conduct.[2]

The state petitioned for appellant's commitment as an SDP. The district court appointed psychologist Paul Reitman, Ph.D., L.P., to serve as the district court's first examiner. Appellant selected the second examiner, psychologist Robert Riedel, Ph.D. During a three-day trial, Dr. Linderman and Dr. Reitman testified that appellant satisfied the statutory definition of an SDP and recommended that appellant be civilly committed. Dr. Riedel recommended releasing appellant to the community under supervision because he "has reached a risk level and has developed sufficient skills and a support system." The district court committed appellant to the MSOP as an SDP. This appeal follows.

## D E C I S I O N

### I. The district court did not err by committing appellant as an SDP.

Appellant argues that the evidence does not establish that he meets the standard for commitment as an SDP. To commit an individual as an SDP, the district court must find by clear and convincing evidence that a person is an SDP. *See* Minn. Stat. § 253D.07, subd. 3. On review, we defer to the district court's findings of fact and will not reverse those findings unless they are clearly erroneous. *In re Civil Commitment of Ramey*, 648 N.W.2d 260, 269 (Minn. App. 2002), *review denied* (Minn. Sept. 17, 2002). But we review de novo "whether there is clear and convincing evidence in the record to

___

[2] At trial, Dr. Linderman testified that, at the time she completed her report, she forgot that appellant was on conditional release for second-degree assault when he sexually offended against E.W. and therefore his Static-99R score actually shows a high likelihood of sexual reoffense.

4

support the district court's conclusion that appellant meets the standards for commitment." *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003). We review the record in the light most favorable to the district court's decision. *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). Additionally, when, as here, "the findings of fact rest almost entirely on expert testimony, the [district] court's evaluation of credibility is of particular significance." *Id.*

A person is considered an SDP if the person: "(1) has engaged in a course of harmful sexual conduct . . . ; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct . . . ." Minn. Stat. § 253D.02, subd. 16(a). Here, appellant challenges the sufficiency of the evidence to support all three elements of the definition set out in section 253D.02, subdivision 16(a).

## A.    Course of Harmful Sexual Conduct

Appellant argues that the district court "made insufficient findings and erred in concluding that [he] engaged in a course of harmful sexual conduct." We disagree.

Minn. Stat. § 253D.02, subd. 16(a), requires that the person has "engaged in a course of harmful sexual conduct." "Harmful sexual conduct" is defined as "sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another." *Id.*, subd. 8(a). Conduct constituting most forms of criminal sexual conduct is rebuttably presumed to constitute harmful sexual conduct. *Id.*, subd. 8(b).

A course of sexual conduct is not defined by a set numeric value; instead, "course is defined, using its ordinary meaning, as a systematic or orderly succession; a sequence."

5

*Ramey*, 648 N.W.2d at 268 (quotations omitted). It is not limited to "convictions, but may also include conduct amounting to harmful sexual conduct, of which the offender was not convicted." *Id.* The incidents necessary to establish a course of sexual conduct may occur "over a period of time and need not be recent," and the state "is not required to show that the incidents" involve the same or similar conduct. *In re Civil Commitment of Stone*, 711 N.W.2d 831, 837 (Minn. App. 2006), *review denied* (Minn. June 20, 2006).

In a detailed and thorough 47-page order, the district court found that appellant sexually assaulted M.H. more than once in 1990 and 1998 and that he sexually assaulted E.W. in 2002. The district court then determined that, because appellant "has engaged in a number of incidents" that are presumed to be harmful sexual conduct pursuant to Minn. Stat. § 253D.02, subd. 8(b), there is clear and convincing evidence that appellant has engaged in a course of harmful sexual conduct.

The district court's findings and determinations regarding a course of harmful sexual conduct are supported by the record. First, appellant pleaded guilty to first-degree criminal sexual conduct for his assault of E.W., and the evidence in the record suggests that his conduct toward M.H. amounts to at least third-degree criminal sexual conduct. *See* Minn. Stat. § 609.344, subd. 1(b) (2014) (defining third-degree criminal sexual conduct to include sexual penetration with a person at least 13 but less than 16 years of age by an actor more than 24 months older). This conduct is presumptively harmful sexual conduct. *See* Minn. Stat. § 253D.02, subd. 8(b). Second, this conduct shows a "course" of conduct. *See id.*, subd. 16(a)(1). The record indicates that the sexual assault of M.H. occurred in 1990 and again eight years later in 1998, and the sexual assault of

E.W. occurred four years after that in 2002. This is "a systematic or orderly succession; a sequence" of harmful sexual conduct. *See Ramey*, 648 N.W.2d at 268 (quotation omitted). We conclude that clear and convincing evidence supports the district court's finding that appellant has engaged in a course of harmful sexual conduct.

B.      **Sexual, Personality, or other Mental Disorder or Dysfunction**

Appellant next argues that the district court "made insufficient findings and erred in determining appellant lacks the power to control his sexual impulses." We disagree.

Minn. Stat. § 253D.02, subd. 16(a), requires the person to have "manifested a sexual, personality, or other mental disorder or dysfunction." Under the statute, "it is not necessary to prove that the person has an inability to control [his] sexual impulses." *Id.*, subd. 16(b). But the statute does require a showing that the person's disorder "does not allow [him] to *adequately* control [his] sexual impulses." *In re Linehan*, 594 N.W.2d 867, 876 (Minn. 1999) (*Linehan IV*) (emphasis added). Before a person may be committed as an SDP "there [must] be a finding of 'lack of control' of sexual conduct, based on expert opinion tying that 'lack of control' to a diagnosed mental abnormality or personality disorder." *In re Martinelli*, 649 N.W.2d 886, 887 (Minn. App. 2002), *review denied* (Minn. Oct. 29, 2002).

The district court found that Dr. Linderman and Dr. Reitman's "testimony and opinion that [appellant] has serious difficulty controlling his sexually harmful behavior to be credible." It also found that appellant committed a number of sexual assaults while using chemicals. Based on these findings, the district court determined that appellant lacked adequate control of his sexual conduct due to his disorders.

Sufficient evidence in the record supports the district court's findings and determinations regarding appellant's lack of adequate control. All three examiners found that appellant suffers from antisocial-personality disorder based on his criminal history, lack of remorse, high levels of aggression and violence, and a general reckless disregard for the safety of others. Dr. Linderman also found that appellant suffers from poly-substance dependence. Dr. Linderman and Dr. Reitman both clearly stated that appellant's disorders prevent him from adequately controlling his sexual impulses. Dr. Linderman opined in her report that appellant's "substance dependency and antisocial personality disorder combined were active in his lack of adequate control of his sexual impulses." (Emphasis omitted). Dr. Reitman opined in his report that appellant's disorders contribute to his "inability to control his impulses and behavior." Dr. Reitman also testified that "[e]very single one of [appellant's] diagnoses by themselves and in combination lower his ability to control himself in sexual matters." Clear and convincing evidence supports the district court's finding that appellant has manifested disorders that satisfy the second element of the SDP statute.

### C.    Likely to Engage in Acts of Harmful Sexual Conduct

Finally, appellant argues that the district court "erred in determining that [he] was highly likely to engage in further harmful sexual conduct." We disagree.

Minn. Stat. § 253D.02, subd. 16(a), requires that the person's personality or mental disorder make him "likely to engage in acts of harmful sexual conduct." The supreme court has construed the phrase "likely to engage in acts of harmful sexual conduct" to require a showing by clear and convincing evidence that the person is "highly

8

likely" to engage in such conduct. *In re Civil Commitment of Ince*, 847 N.W.2d 13, 19-22 (Minn. 2014). *Linehan IV*, 594 N.W.2d at 876. When considering whether an offender is highly likely to reoffend, a district court considers a number of factors, including:

> (1) the offender's demographic characteristics; (2) the offender's history of violent behavior; (3) the base-rate statistics for violent behavior among individuals with the offender's background; (4) the sources of stress in the offender's environment; (5) the similarity of the present or future context to those contexts in which the offender used violence in the past; and (6) the offender's record of participation in sex-therapy programs.

*Stone*, 711 N.W.2d at 840 (citing *In re Linehan*, 518 N.W.2d 609, 614 (Minn. 1994) (*Linehan I*)). "No single factor is determinative of this complex issue." *In re Civil Commitment of Navratil*, 799 N.W.2d 643, 649 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011).

Here, the district court determined "that all of the *Linehan* factors exist in [appellant's] case and show that he is highly likely to sexually re-offend." The district court explained its determination:

> The Court finds that [appellant] committed his last sexual offense while under probation supervision for a misdemeanor-level offense and pre-trial conditions of release for a Second-Degree Assault charge, he has sexually offended against a family member and a stranger, he sexually offended at least two different age groups, he broke into the residence of his last victim, he does not know why he committed his sexual offenses, he has a long history of rule breaking behavior (Antisocial Personality Disorder), he has a long chemical-use history, he continued his violent behavior in prison, and he is an untreated sex offender. All of those facts show that he is

9

highly likely to sexually re-offend in the future and is dangerous to the public.

Both Dr. Linderman and Dr. Reitman opined that appellant was highly likely to sexually re-offend if not committed. They both specifically addressed each of the six *Linehan* factors in their reports or provided testimony as to those factors at trial. Dr. Riedel did not specifically address the *Linehan* factors in his report, but on cross-examination he testified that when the *Linehan* factors are applied to appellant they suggest that he is highly likely to re-offend. Despite this analysis at trial, Dr. Riedel concluded that appellant should be released into the community. The district court found "Dr. Linderman and Dr. Reitman more credible and credit[ed] their opinions in support of commitment over Dr. Riedel's opinion in opposition."

Appellant only challenges the district court's determination as to the second, third, and sixth *Linehan* factors.

### 1.    History of violent behavior

Appellant argues that the district court erred when it determined that the second *Linehan* factor weighed in favor of his commitment because he has not had "significant behavioral issues in nearly two years." In its order, the district court stated that "good behavior in a controlled setting is not determinative on the issue of dangerousness. [Appellant] has continued to push boundaries, just to a lesser degree. The evidence suggests that if he were in a less controlled setting, [appellant] would still be highly likely to reoffend." The record supports this finding. All three examiners testified that good behavior in a controlled setting is not determinative of a person's dangerousness in the

10

community.  Therefore, the district court did not clearly err in determining that this factor weighed in favor of commitment.

## 2. Base-rate statistics

As to the third *Linehan* factor, the district court found that "the Static-99R and the Static-2002R both place [appellant] in the high and moderate-high risk categories and that increases his risk for re-offense under this factor."  The district court also found that appellant's "dynamic risk factors, as identified by Dr. Linderman, also increase his risk for re-offense."  The record supports these findings.  Dr. Reitman found that appellant scored in the high risk or highest category on the Static-99R, the Stable-2007, the ACUTE-2007, and the SRA-FV.  Dr. Riedel found that appellant scored in the high-risk category on the Static-99R, low-risk category on the MnSOST-3.1.2, and moderate-high-risk category on the Static-2002R.  And, as previously mentioned, Dr. Linderman found that appellant scored in the high-risk category on the Static-99R and the moderate-high-risk category on the Static-2002R.  In addition, Dr. Linderman specifically identified a number of external risk factors that she took into account along with the Static-99R score when making her recommendation.

Appellant argues that, based on recent studies conducted in other states, the recidivism rates reflected by the Static-99R are not accurate.  But even if we were to disregard the Static-99R, appellant scored in the high- to moderate-high-risk categories on several of the other actuarial tools used by the examiners.  Further, Dr. Linderman testified that she would never base her recommendation solely upon a score on the Static-99R.  And, when cross-examined on the reliability of the Static-99R and the recent

studies, she stated that the Static-99R is one of the most reliable actuarial tools available and that the recent studies do not change her recommendation. Therefore, the district court did not clearly err in determining that this factor weighed in favor of commitment.

### 3. Record in sex-therapy programs

As to the sixth *Linehan* factor, the district court found that appellant "is an untreated sex offender and does not have a re-offense prevention plan." The record supports these findings. Appellant was terminated from MSOP two times while in prison, both times for threatening others and additionally, the last time, for not progressing in the program. During his time in treatment, appellant reported that he did not want to be there. He also repeatedly missed his individual and group therapy sessions. Further, appellant's reoffense prevention plan that he prepared and submitted to the court demonstrated no accountability and was not approved through MSOP. Therefore, the district court did not clearly err in determining that this factor weighed in favor of commitment.

In sum, because clear and convincing evidence establishes that appellant engaged in a course of harmful sexual conduct and because appellant has disorders that make him highly likely to engage in harmful sexual conduct in the future, we conclude that the district court did not err by determining that appellant meets the statutory criteria for commitment as an SDP.

**Affirmed.**

12

**STAUBER**, Judge (concurring specially)

After a careful review of the appellate file, I agree that Aaron Michael Hayes likely meets the statutory criteria for commitment as a sexually dangerous person. But I write separately to highlight my deep concern about Minnesota's sex-offender commitment system. Our state has still not grappled with the very real issues raised in *Karsjens v. Piper*, 109 F. Supp. 3d 1139 (D. Minn. 2015), *appeal docketed* No.15-3485 (8th Cir. Nov. 2, 2015). Although the federal district court did not hold that Minnesota's initial commitment procedures were unconstitutional, it found grave fault with the state's post-commitment policies. We cannot continue to turn a blind eye to this reality. I am particularly concerned because the three examiners here did not unanimously agree that Hayes's commitment was necessary. But, according to our standards of review, we defer to the district court's credibility determinations. *In re Civil Commitment of Navratil*, 799 N.W.2d 643, 647 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011). The district court found the opinions of the examiners who recommended commitment more credible than the examiner who opined that Hayes could be released to the community under supervision.

For all these reasons, I concur in the majority's decision but remain uneasy about the MSOP program.